[L. A. No. 13086. In Bank.—June 30, 1933.]

OSCAR P. CALDWELL, Appellant, v. LEONORE TAYLOR, etc., et al., Respondents.

472

D. A. Knapp for Appellant.

Andreani, Haines, Bisher & Carrey and Haines & Bisher for Respondent Leonore Fisher Caldwell.

Harold E. Thomas for Respondent Bank of America National Trust and Savings Association.

CURTIS, J.—This is an appeal by plaintiff from a judgment of dismissal based upon an order sustaining demurrers filed by defendants to plaintiff's second amended complaint without leave to amend.

By this suit in equity, plaintiff, the only son and heir of Perry Moore Caldwell, seeks to have a beneficiary named in his will as Leonore Fisher Caldwell declared an involuntary trustee for the use and benefit of plaintiff, of the property devised and bequeathed to her, upon the ground that said will was procured by fraud exerted upon the testator by the beneficiary, his supposed wife. Faced at the outset by a judgment sustaining the order admitting the will to probate (*Caldwell* v. *Bank of Italy,* 112 Cal. App. 104 [296 Pac. 312), plaintiff, while admitting the existence of said order, attempts to avoid its effect by seeking the aid of equity upon the ground that said order admitting the will to probate was procured by virtue of fraud practiced upon him, the plaintiff, whereby he was prevented from properly presenting his contest of said will.

Briefly stated the allegations of said complaint are to the effect that the defendant, Leonore Taylor, "a notorious woman who had been arrested many times for grossly immoral acts and for sundry misdemeanors and crimes," induced Perry Moore Caldwell, father of the plaintiff, to accompany her to Tia Juana, Mexico, where in a drugged and intoxicated condition he was induced to go through a marriage ceremony with her before a Mexican magistrate; that she falsely represented to him that she was a woman of fine character and good reputation and prior to her marriage to him was a single woman; that Perry Moore Caldwell at the time of the marriage was a victim of incurable cancer of the throat and defendant, in order to gain his sympathy, represented to him that she was a victim of a like fatal disease in its earlier stages; that after living with him as his wife for about a fortnight, she induced him to go to a hospital, where he remained until his death less than two months later; that during this time she importuned him to make adequate financial provision by will for her, his legally wedded wife, and "so harassed, urged, cajoled, threatened and nagged him" that he made a will in which he left her the sum of $4,500 for the purchase of a home and devised to the Bank of Italy the sum of $25 500 as a trust fund, the net income of which should be paid to her during her life; that during this time she prevented to a large extent plaintiff from visiting his father; that the deceased communicated with plaintiff by writing, as he was unable to

talk, and by writing informed plaintiff that he had executed the will because of the fact that the defendant was his lawfully wedded wife and she had assured him that she was a woman of fine character and reputation and worthy of his consideration, but that he had become suspicious of her, and that he wished his son to investigate in order that he might act accordingly; that upon discovering the communications between the father and son, the defendant prevented the plaintiff from seeing his father except for brief periods; that "at or about the time of or prior to the probate of the will" by defendant, the plaintiff ascertained from the police records of the city of Los Angeles that said Leonore Taylor was a "vicious, dissolute and grossly immoral woman of the streets"; that "prior thereto" plaintiff talked with defendant and asked her directly what her name and marital status were prior to the time of her purported marriage to plaintiff's father; that she represented to him that she was, on the day of said marriage, a widow, her husband having died many years before, and that her name was Leonore Fisher; that shortly after the six months' period allowed by statute for the contest of the probate of the will, plaintiff ascertained that not only was the defendant, Leonore Taylor, a notorious woman who had been many times arrested, but that on the date of her purported marriage to Perry Moore Caldwell she was in fact the wife of Carl L. Taylor; that said misstatements with reference to her real identity and her marital status were represented and stated by defendant to plaintiff with the intent and purpose of thereby preventing the discovery by plaintiff of sufficient facts to enable plaintiff to fully and properly present a case in contest of said will within six months after the probate thereof, and that by reason of said false and fraudulent representations and of her deceit she succeeded in preventing the plaintiff from presenting a contest of said will; that the estate of Perry Moore Caldwell, at the time of his death of the value of approximately $60,000, had been diminished by the prevailing prices of stocks and bonds to less than $29,500, approximately the value of defendant's interest in said estate. In his prayer, plaintiff seeks to have the Bank of America appointed an elisor by the court to receive all moneys as and when payable to said defendant, Leonore Taylor, in the place of said defendant, to receipt therefor

in her name and to pay the same over to plaintiff, the acts of said elisor to be construed as the acts of Leonore Taylor as constructive trustee for the plaintiff, and for such other relief as the court may deem proper.

■ The jurisdiction of equity to afford appropriate relief from judgments generally and from orders and decrees in probate proceedings upon a showing of proper circumstances is well settled. (*Bacon* v. *Bacon,* 150 Cal. 477 [89 Pac. 317]; *Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201 [92 Pac. 184].) It has been specifically held that equitable relief may be granted against orders and decrees of a probate court, including a decree of distribution, and a decree probating a will. (*Estate of Ross,* 180 Cal. 651 [182 Pac. 752]; *Nicholson* v. *Leatham,* 28 Cal. App. 597 [153 Pac. 965, 155 Pac. 98]; *Bacon* v. *Bacon, supra.*) ■ Since the probate of a will is a matter exclusively within the jurisdiction of the probate court equity may not set aside the probate, but it may declare the beneficiary a trustee for those who have been defrauded. (*Estate of Ross, supra; Estate of Walker,* 160 Cal. 547 [117 Pac. 510, 36 L. R. A. (N. S.) 89]; *Campbell-Kawannanakoa* v. *Campbell, supra; Bacon* v. *Bacon, supra; Sohler* v. *Sohler,* 135 Cal. 323 [67 Pac. 282, 87 Am. St. Rep. 98].) And such character of relief is common. The judgment, order or decree from the effect of which relief is sought cannot constitute a bar to equitable relief. ■ A proceeding for equitable relief is not a collateral attack, and since its sole aim and purpose is to avoid the effect of said judgment, the doctrine of *res judicata* can have no application to such judgment. (*Bacon* v. *Bacon, supra; Campbell-Kawannanakoa* v. *Campbell, supra.*)

■ The case comes to us upon the question of the correctness of an order sustaining the demurrers, and the facts stated in the complaint must be accepted as true, at least for the purpose of the present argument. Assuming them, therefore, to be true, does the complaint state facts sufficient to entitle the plaintiff to the interposition of the aid of equity to avoid the effects of the judgment affirming the order of probate already made and entered? The claim of plaintiff that he is entitled to such aid is predicated upon the fraud practiced by the defendant, Leonore Taylor, a beneficiary under his father's will. An analysis of the

authorities upon the question of what fraud will warrant the aid of equity indicates that only upon proof of *extrinsic* and *collateral* fraud can plaintiff seek and secure equitable relief from the judgment. A showing of fraud practiced in the trial of the original action will not suffice. The authorities hold this to be intrinsic fraud, and uniformly hold that since there must be an end to litigation, and the fraud was part of the case presented in the former action, equity will not reopen the litigation. The leading case of *United States* v. *Throckmorton*, 98 U. S. 61, 65 [25 L. Ed. 93], so holds. In that case it was held that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony. "The reason for this rule is, that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy." (*Pico* v. *Cohn*, 91 Cal. 129 [25 Pac. 970, 971, 27 Pac. 537, 25 Am. St. Rep. 159, 13 L. R. A. 336].) In *United States* v. *Throckmorton, supra,* the court stated that the cases where such relief would be granted are those in which, "by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud and deception practiced on him by his opponent, as by keeping him away from court, a false promise of compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff, or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat, or where the attorney regularly employed corruptly sells out his client's interest to the other side—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing. (Citing authorities.)

In all these cases, and many others which have been examined, relief has been granted on the ground that by some fraud *practiced directly upon the party seeking relief* against the judgment or decree that party has been prevented from presenting *all* of his case to the court". (Italics ours.) This definition has become the well recognized and standard definition of extrinsic fraud. The rule laid down in that case that intrinsic fraud would not justify equitable intervention was stated in *Pico* v. *Cohn, supra,* which held that a judgment would not be vacated merely because it was obtained by forged documents, perjured testimony, or by bribing a witness to swear falsely. And in *Clavey* v. *Loney,* 80 Cal. App. 20 [251 Pac. 232, 234], the court held the fact that by mistake an entire interest in property was by decree of distribution distributed to one entitled to only a fractional interest therein would not, in the absence of extrinsic fraud, warrant equitable relief. The court there stated that "the extrinsic fraud which alone will warrant a court of equity in setting aside a judgment or decree consists of such fraud as prevents a real trial of the issues involved in the case, like conduct which prevents the injured party from receiving notice of the action or which causes the absence of necessary witnesses".

It also seems to be the rule that the fraud alleged must not be the fraud which is in effect the issue in controversy, the fraud upon which the cause of action in the former suit was based. In other words, the rule awarding equitable relief cannot be held to include such frauds as could have been relieved by the probate court itself by refusing probate, where the injured party had actual notice of the probate proceedings in time to make his contest and was not prevented from so doing by some fraud of the other party. In *Brazil* v. *Silva,* 181 Cal. 490 [185 Pac. 174], the court held that, inasmuch as the issues presented by the complaint before it were *not* questions before the probate court, that is, the question as to the instrument being the legal and valid will of the decedent unrevoked at the time of his death, the plaintiffs were *not* concluded by the order admitting the will to probate.

It is apparent from the foregoing discussion that the issue of fraud practiced upon the testator which was the issue involved in the contest of the probate of the will (although

in fact the case was decided upon the issue of whether or not the contest had been filed within the statutory time allowed) is forever foreclosed from further consideration unless it be successfully established by plaintiff that by a different and distinct fraud practiced directly upon him by his opponent he was prevented from presenting all of his case to the court. Plaintiff has foreseen and recognized the necessity for the presence of such fraud, extrinsic and collateral to the main issue of fraud involved in the will contest, and seeks to supply it by the allegation of his complaint that ''plaintiff talked with said defendant and asked her directly what her name and marital status was prior to and at the time of her purported marriage with plaintiff's father; that defendant then and there stated that she was a single woman on May 29, 1929 (the date of said marriage ceremony in Tia Juana), that her name was Leonore Fisher, that she had never gone by any name except Leonore Fisher since many years before when she had married a man named Fisher . . . that defendant so represented and stated with the knowledge that plaintiff could find in no record of vital statistics or any other public record any fact disclosing the truth as to her marital relationship on said May 29, 1929, and with the intent and purpose of thereby preventing the discovery by plaintiff of sufficient facts to enable plaintiff to fully or properly present a case in contest of said will within six months after the probate thereof, August 21, 1929; that by reason of her said false and fraudulent representations and of her deceit in the premises said defendant succeeded as aforesaid in preventing plaintiff from presenting to the above named court a contest of said will''. By this statement, plaintiff has attempted to avoid the pitfalls of pleading either intrinsic fraud, or fraud inherent in the original cause of action, and has attempted to state a cause of action which will come within the classification of extrinsic fraud as indicated by those cases in which relief has been granted. (*Sohler* v. *Sohler, supra, Bacon* v. *Bacon, supra, Simonton* v. *Los Angeles Trust & Savings Bank*, 192 Cal. 651 [221 Pac. 368], *Brazil* v. *Silva, supra,* and *Flood* v. *Templeton*, 152 Cal. 148 [92 Pac. 78, 13 L. R. A. (N. S.) 579].)

We think plaintiff has been successful, in that, in said allegation above set out he has stated facts which distinguished the fraud therein alleged from the fraud which was

the subject matter of the will contest. Although it is true that, in a manner of speaking, the deliberate and intentional falsehood made by defendant, Leonore Taylor, to plaintiff for the purpose of concealing her real identity, her past record, and her marital status, was the same specie of fraud as that designedly practiced upon the testator, plaintiff's father, and was but the final step in the plan of fraud as originally conceived and executed, which step was necessary to prevent the entire structure of falsehood and deceit from collapsing, it is, in fact, not an actual part and parcel of the original fraud which was the subject matter of the contest of the will. That fraud was fraud practiced upon the testator; the fraud stated in the above allegation was practiced upon the plaintiff with the intent and purpose of misleading him and thereby preventing him from presenting to the court the actual facts with reference to the fraud which would, if established, vitate the will.

The question remains whether he has stated a case of extrinsic rather than intrinsic fraud. The distinction between intrinsic and extrinsic fraud is quite nebulous and a rather extensive search has failed to disclose any case, either one dealing with intrinsic fraud, or one dealing with extrinsic fraud, in which the facts are closely similar to those set out in plaintiff's complaint. We are of the opinion, however, that the fraud therein alleged does come within the general definition of extrinsic fraud as defined by the above authorities. The main requirement to establish extrinsic fraud is that the unsuccessful party was prevented by his adversary from presenting *all* of his case to the court. One of the examples given is that of a party who is prevented from appearing in court. It would seem that the deceit practiced in the instant case was just as effective to prevent the proper presentation of the contest as if the plaintiff had been prevented from being present at the hearing. In *Flood* v. *Templeton, supra,* the court held that the fraud practiced upon one who was induced to refrain from presenting a proper defense to a foreclosure of a mortgage suit by virtue of the promises and agreement of the plaintiff therein to devise and bequeath the property upon his death to the defendant was, as to the defendant, extrinsic fraud which prevented a presentation at the trial of defendant's meritorious defense. Conceding that the facts are not simi-

lar, the underlying thought is the same in that case as in the instant case, wherein the plaintiff, by virtue of the false statements of the beneficiary, was prevented from setting up a real defense to the probate of his father's will. In each case, the party seeking the aid of equity had been deprived by the deceit of an opponent from properly presenting the real issues. The instant case is also somewhat similar in principle to the case of *Ocean Ins. Co.* v. *Robert Fields,* 2 Story (U. S.), 59 [Fed. Cas. No. 10406], a case which involved a suit on an insurance policy in which the court held that the wilful concealment of the fact of the original fraud upon which the action to recover the insurance on a lost boat was based, was sufficient to warrant the aid of equity, since the fact of such original fraud if known to the defendant would have been a complete answer to the success of the suit.

In determining whether or not the wilful concealment by defendant of her real identity and her deliberate falsehood to plaintiff with reference to her marital status at the time of her purported marriage to the testator will warrant the interposition of equity to prevent the retention by her of the fruits of her fraud, it must be borne in mind that, accepting as true the allegations of the complaint, the statements so made were not mere equivocations or slight deviations from the truth, but were in fact false declarations deliberately and designedly made for the express purpose of preventing plaintiff from discovering and disclosing to the court the fraud and deceit practiced upon the testator, within the short period of six months now allowed by statute for the contest of a will after probate. It would, of course, be too much to expect one who would designedly enter upon the course of deceit and fraud alleged in the complaint to give aid to her adversary by confessing to him any facts detrimental to the success of her scheme. Plaintiff does not, however, complain that his opponent remained passive and failed to give him assistance, but predicates his claim to relief in equity upon the charge, in effect, that she by active deceit and by intentional and deliberate falsehoods designed to prevent a successful contest of the will within the time limit provided by statute did in fact delay and hinder and prevent him from successfully prosecuting such contest.

We are, therefore, of the opinion that if plaintiff upon a trial of this issue is able to prove that in fact by such fraud he was prevented from adequately and fully presenting his contest of his father's will, then he is entitled to a consideration by the court of the question of whether or not the will was in fact procured by the fraud of the beneficiary as alleged in his complaint, which question has been heretofore foreclosed to him by the order admitting the will to probate. Upon successful proof by him that it was so procured, he is entitled to whatever relief the court may deem proper. The fact that it may be extremely difficult to successfully prove that plaintiff was prevented from contesting the will by reason of the deliberate falsehoods of the defendant beneficiary of the will, and further that the will was procured through the fraudulent schemes and deceit of the defendant beneficiary can have no weight in deciding the question of whether or not the plaintiff has stated a cause of action in his complaint.

It follows from what we have said that the lower court was in error in its conclusion that the complaint failed to state a cause of action. Judgment is reversed, with orders to the trial court to overrule the demurrers of defendants.

Waste, C. J., Shenk, J., Seawell, J., and Thompson, J., concurred.

Rehearing denied.