### O'BRIEN v. MARKHAM et al.
### No. 1030–M.

District Court, S. D. California, Central Division.

Dec. 24, 1936.

McAdoo, Neblett & Warner, of Los Angeles, Cal. (by William H. Neblett and Walter Guthrie, both of Los Angeles, Cal.), for complainant.

Harlan G. Palmer, of Hollywood, Cal., and Sparling & Teel and Frank B. Belcher, all of Los Angeles, Cal., for defendants.

McCORMICK, District Judge.

On October 14, 1936, Maude Lillian O'Brien, a resident of the state of Michigan, filed in this court her verified bill of complaint in equity against · Blanche C. Markham individually and as executrix of the estate of William F. Markham, deceased, Harlan G. Palmer, Ethelyn Hunkins Palmer, Harlan. Guyan Palmer, Jr., Byron Hunkins Palmer, Ralph Judson Palmer, Margaret Dora Palmer, Ben S. Sprague, and Edward Jenkens, all residents of the state of California, and certain corporations organized and existing under the laws of the state of California, as defendants.

She alleges substantially that she, her brother Leigh H. Markham, also residing in Michigan, and another brother now deceased, were the three children born of the marriage of William F. Markham and Carrie A. Shepard which occurred in 1872; that shortly after her mother's death in 1910 her father married Carrie B. Shortman, who is now the widow of her father, he having died April 30, 1930, a resident of Los Angeles county, Cal.; that no children were born of the last marriage; that on March 4, 1930, her father executed a will which on May 22, 1930, was, upon the petition of his widow and her attorney, Harlan G. Palmer, admitted to probate by the superior court in Los Angeles county, Cal., which· court thereupon issued letters testamentary to Blanche C. Markham without bond pursuant to the waiver of bonds in said will; that since the probate of said will to March 20, 1936, many routine proceedings have been taken in said state court in the administration of said decedent's estate, and that the estate remains undistributed; that the estate has been regularly appraised in said court at $1,826,051.42, and that it consists entirely of separate property of her father that was acquired by him prior to his marriage to Blanche C. Markham.

The will of March 4, 1930, is annexed to the bill of complaint and made a part thereof. Its material terms and provisions may be epitomized as follows:

All prior wills are revoked; Blanche C. Markham, the widow is appointed executrix and trustee; there is bequeathed to her for the term of her natural life with remainder over to the two children of Harlan G. Palmer, Sr., and his wife Ethelyn Hunkins Palmer, in equal shares, the home place and its accessories at Glendale, Cal.; all the rest, residue, and remainder of the estate is devised and bequeathed to the widow, Blanche C. Markham, to be by her held in trust, with plenary discretionary power of management, control, investment, and disposal during her natural life, and with directions to pay from the gross income of the trust estate all taxes, maintenance expenses, attorneys' fees, and any other charges that the trustee may deem necessary or advisable to defend against any attack upon the trust by any person, both during and after probate administration upon the estate; and then from the net income of the estate the trustee shall pay, as soon after Mr. Markham's death as funds are available, the following legacies: (1) To the complainant daughter of the deceased, $250 a month during her natural life; (2) to Leigh H. Markham, the son of the deceased, $250 a month during his natural life; (3) to Louise Markham, sister of the deceased, residing at Detroit, Mich., $100 a month during her natural life; (4) to Ben S. Sprague, a "friend and chum" of the deceased, $250 a month during his natural life; (5) to Edward Jenkens, "gardener," $150 a month during such time as he is employed by the executrix or trustee for work in connection with the estate; (6) to Isa Markham, a niece, residing at Manville, Mich., $150 a month during her natural life; (7) to E. S. Roe, "friend and foreman," of Plymouth, Mich., $150 a month during his natural life; and (8) to Blanche C. Markham, widow of the deceased, such part of the remaining income as she may desire to use for the maintenance, care, and protection of the homestead and for her personal pleasure, support, maintenance, and enjoyment of the best clothing, automobiles, travel, and luxuries.

The will then directs that any income from trust money or property not applicable to any of the above-mentioned trusts and purposes shall be by the trustee invested for the benefit of the children of Harlan G. Palmer, Sr., and wife, and that upon the death of Mrs. Markham, Harlan G. Palmer, Sr., shall succeed her as trustee and shall hold such part of the estate as the court shall approve as ample to provide an income for payment of the remaining bequests before mentioned, and shall dis-

tribute, free from the trust, the balance of the estate and any undistributed net income, to the said children of Harlan G. Palmer, Sr., and upon the completion of the trust, respecting the said bequests to Markham's relatives, friends, and employees, the remainder of the estate is given outright and completely to the said Palmer children.

The beneficiaries under the testamentary trust are restrained by the will from selling, transferring, or in any manner impairing or affecting their beneficial or other rights in the estate.

There is a clause in the will evidencing the testator's intentional omission of all heirs whom he has not specifically mentioned, and directing that any devisee, heir, or other person who has or might have an interest in the estate of said testator and who directly or indirectly seeks to contest or annul the will or any of its provisions or terms or to assert any claim to any part of the estate of the testator, except in conformity to the will, shall be given $1 and no more, and the additional share which the will gives to such person shall be distributed to the next heirs at law, excluding the objecting and contesting legatee, devisee, or successor, according to the existing laws of succession in the state of California.

The will concludes with a request by the testator that his friend and personal attorney for many years, Harlan G. Palmer, Sr., be employed by his executrix and trustee as attorney, adviser, and assistant in carrying out the provisions of the will.

Upon information and belief the complainant further alleges that the will was drawn by Harlan G. Palmer, who for many years had been the personal attorney of Markham, and that it was signed and executed when Markham was approximately 80 years of age, senile and mentally incompetent to understand the purport of the will, and in his last illness rapidly approaching death; that the will was procured as the result of an illegal conspiracy between Mrs. Markham and Harlan G. Palmer whereby Mrs. Markham would receive a life estate in practically all of her husband's property, with ultimate remainder to Palmer's children, to the "practical disinheriting" of Markham's children; that in order to carry out the conspiracy and obtain Markham's signature to the will, Palmer and Mrs. Markham falsely represented to Markham that the complainant and Leigh H. Markham were not his children by blood, but were merely his stepchildren or adopted children, and that they each bitterly hated Markham; that at the time the questioned will was executed Markham had another will in which "practically ninety per cent." of his estate had been left to his son and daughter, and that Mrs. Markham and Palmer knew that Markham's estate, being separate property, would under the prior will go to Markham's children, and also knew that if Markham revoked the former will and died intestate the widow would receive only one-third of the estate and the other two-thirds would go to the complainant and her brother in equal shares, and that for the purpose of defeating the inheritance rights of Markham's children and obtaining the estate for Mrs. Markham and the Palmer children the conspiracy was formed and carried out, and that Markham, being of unsound mind and memory, was deceived by the conspirators to the damage of complainant of the share of her father's estate that would have come to her either by the former will or under the succession laws of the state of California; that the conspirators concealed the true facts of Markham's incompetent testamentary capacity from the state probate court and continue to do so, notwithstanding that Mrs. Markham and Harlan G. Palmer, Sr., are officers of said court as executrix and attorney for the executrix respectively in the matter of the estate of William F. Markham, deceased; that Mrs. Markham and Palmer have held the estate open and undistributed for more than six years for their own benefit and that of investments in connection with the corporation defendants named in the bill of complaint. It is further alleged that approximately $500,000 has been thus diverted from the estate and that only partial payments have been made to the beneficiaries named in the will so that income may be accumulated for the benefit of the Palmer children.

The concluding averments of the bill of complaint are to the effect that the complainant was not notified of her father's illness until after his death, when Mrs. Markham telegraphed her of Markham's death; that she thereafter employed attorneys who made an investigation of the facts surrounding the execution of the will, and that these attorneys advised against a contest of the will.

Then follows this important and vital allegation: "Complainant alleges on information and belief that these attorneys interviewed Harlan G. Palmer and Blanche C. Markham and were told by them that Mr. Markham was of sound mind and disposing memory, thus actively concealing from them the fact that Mr. Markham was incompetent, of unsound mind, and unable to comprehend the meaning of his act when he signed the will. Also the conspirators actively concealed from these attorneys the conspiracy between themselves to obtain, by the fraudulent representations herein alleged, the property of Mr. Markham for themselves. The attorneys representing the complainant, relying upon the truth of the statements so made to them, reported adversely to the complainant and she, in the belief that she had no rights, was prevented from making a contest of the will within the time allowed by the statutes of California. Complainant did not learn of the conspiracy or of the actual condition of her father or the fact that Palmer himself drew the will until within the last sixty days, nor did she, prior to that time, learn any fact which might have put her on inquiry."

The bill of complaint avers an adequate jurisdictional amount and terminates with a prayer that the defendants and each of them be decreed to be trustees for complainant of an undivided one-third interest in the properties belonging to William F. Markham at the time of his death; that defendants be ordered to execute conveyances to complainant of one-third of all the properties belonging to William F. Markham at the time of his death; that defendants be required to account to complainant for her distributive share of the rents and profits of real estate and of income from personal property; that the court permanently enjoin the defendants and each of them from taking anything under the will of William F. Markham or any of the decrees of court entered in probate proceedings in the matter of the estate of William F. Markham, deceased, in the superior court of the state of California in and for Los Angeles county, and for other and general relief.

The foregoing is not a detailed analysis of the bill of complaint, but is intended simply as a statement of the substance of complainant's allegations against the defendants that are considered sufficient to outline broadly the material grounds of suit herein. It is clear from this resumé that there is no federal question involved in this suit and that our jurisdiction rests entirely upon diversity of citizenship and amount in controversy.

The defendants have duly appeared and severally filed a motion to dismiss the bill of complaint upon 28 separately specified grounds. It is considered necessary to mention or discuss but two of them, as the others are either related to these two grounds of objection or are considered to be of minor or relatively unimportant significance in the determination of the suit at this time. The motion to dismiss the bill is in the nature of a demurrer, and for the purpose of the motion the material allegations of the bill must be taken as true. Edwards v. Bodkin (C.C.A.9) 249 F. 562.

The two crucial questions for decision may be thus stated: (1) Assuming the facts averred in the complaint to be true, are such alleged facts sufficient to give this federal court of equity jurisdiction to hear and determine the suit and administer any relief that is sought by the complainant? And (2) Is the bill of complaint vitiated in omitting as suitors or parties therein the following beneficiaries under the questioned will of Markham, namely, Leigh H. Markham, Louise Markham, Isa Markham, and E. S. Roe?

Both questions are answered in the affirmative.

Primarily it is to be observed that a suit which is essentially a proceeding to set aside, contest, or revoke the probate of a will or to administer upon the estates of decedents in rem is not within the ordinary equity jurisdiction of federal courts. Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; Ellis v. Davis, 109 U.S. 485, 3 S.Ct. 327, 27 L.Ed. 1006; Broderick's Case, 21 Wall. 503, 22 L.Ed. 599.

The reason federal courts are without power to entertain probate proceedings is not primarily because they are national courts, but because the subject of probate does not belong to general equity jurisdiction under long-established chancery practice. In the first place, courts of equity cannot act in probate matters, because the subject is statutory, and in this country, as a rule, the laws of the several states determine the succession to the property of intestate decedents and provide for the probate and establishment of wills and testamentary disposition of property.

State statutes confer upon various local tribunals jurisdiction over probate proceedings and administration, and the courts in exercising the powers conferred exercise statutory, and not equitable, powers; and in the second place, courts of equity will not entertain jurisdiction over fundamentally probate proceedings because they are in the nature of proceedings in rem. Underground Electric Rys. Co. v. Owsley (C.C.A.2) 176 F. 26. And notwithstanding some recent decisions in state courts entering decrees operating in rem between parties without express statutory authorization (see Simpson's Fifty Years of American Equity, vol. 50, Harvard Law Review 171.) the ancient maxim "Equity acts in personam" is still generally applied throughout the United States in the ascertainment of the jurisdiction of courts.

However, the rule which prohibits United States courts from exercising what is essentially probate jurisdiction extends no further than the reason for it, and where the state law, statutory or customary, gives to the citizens of the state, in an action or suit inter partes, the right to question at law the probate of a will or to assail probate in a suit in equity, the courts of the United States in administering the rights of citizens of other states will enforce such remedies. Farrell v. O'-Brien, 199 U.S. 89, 110, 25 S.Ct. 727, 50 L.Ed. 101.

In other words, the principle is established by eminent authority that when the state law gives one who wishes to assail the validity of a will the right to institute in a state court, either at law or in equity, an independent suit not ancillary to the probate proceedings, he may exercise the like privilege in a federal court, providing there is the necessary diversity of citizenship and amount in controversy. Gaines v. Fuentes, 92 U.S. 10, 18, 23 L.Ed. 524; Ellis v. Davis, 109 U.S. 485, 3 S.Ct. 327, 27 L.Ed. 1006.

It cannot be said that the whole suit that is averred by the complainant in her bill of complaint in this court is merely ancillary to the probate proceedings in the state court. It is true that there are allegations in the body of the complaint and petitions in the prayer for relief that are manifestly issuable features in the probate proceedings, and therefore presumably concluded therein and by orders made by the probate court, such as the allegations relating solely to the incompetency of Markham to make the will, the invalidity of the will itself, and the claims of fraud and conspiracy and breach of confidential relationship that are alleged to have operated upon the testamentary act of Markham. These are what the law denominates intrinsic matters and are not cognizable in a court of equity. In the eyes of the law all such complaints are inherently involved, considered, and determined in the probate court and in the legally available proceedings therein, and cannot be reopened or relitigated in courts of equity. But the allegations in the complaint relating to the asserted concealment, fraud, and conspiracy that it is claimed operated to prevent the complainant from making a contest of the questioned will of Markham within the time allowed by the statutes of California are not in the category of intrinsic fraud. These constitute averments of extrinsic or collateral fraud that in my opinion are sufficient to confer jurisdiction upon either state or federal courts of equity within the state of California. Lee v. Minor (C.C.A.9) 263 F. 507, certiorari denied 253 U.S. 488, 40 S.Ct. 485, 64 L.Ed. 1027; Caldwell v. Taylor, 218 Cal. 471, 23 P.(2d) 758, 88 A.L.R. 1194.

In Lee v. Minor, supra, our Circuit Court of Appeals, in receding from its previous conclusion in the same appeal, 260 F. 700, wherein it had decided that the federal court was without jurisdiction in a situation that in some aspects is not unlike the material features in the instant suit, said: "This view is reached after re-examining the decisions of the Supreme Court of California, where it is held that an action will lie on the equity side of the court for relief against a judgment wrongfully made by reason of mistake or extrinsic fraud. In McGavin v. San Francisco P. O. A. Soc., 34 Cal.App. 168, 167 P. 182, the earlier cases are reviewed, and it is held that extrinsic fraud or mistake may consist, among other things, of keeping the unsuccessful party away from court by a false promise of a compromise or purposely keeping him in ignorance of the suit. Bacon v. Bacon, 150 Cal. 477, 89 P. 317; Benning v. Superior Court, 34 Cal. App. 296, 167 P. 291; Campbell-Kawannanakoa v. Campbell, 152 Cal. [201] 208, 92 P. 184; Title Insurance & Trust Co. v. Cal. D. Co., 171 Cal. 173, 152 P. 542; People v. Norris, 144 Cal. 422, 77 P. 998." And in Caldwell v. Taylor, supra, the California Supreme Court, in differentiating between asserted fraud that is practiced

upon a testator which induced the testamentary act that is cognizable solely in probate proceedings, and alleged fraud that is claimed to have been practiced upon a complainant with the intent and purpose of misleading him and thereby preventing him from presenting to the probate court the actual facts with reference to the fraud which would, if established, vitiate the will and which is recognized as within the domain of a court of equity, stated: "The main requirement to establish extrinsic fraud is that the unsuccessful party was prevented by his adversary from presenting all of his case to the court. One of the examples given is that of a party who is prevented from appearing in court. It would seem that the deceit practiced in the instant case was just as effective to prevent the proper presentation of the contest as if the plaintiff had been prevented from being present at the hearing. In Flood v. Templeton, supra (152 Cal. 148, 92 P. 78 [13 L.R.A.(N.S.) 579]), the court held that the fraud practiced upon one who was induced to refrain from presenting a proper defense to a foreclosure of a mortgage suit by virtue of the promises and agreement of the plaintiff therein to devise and bequeath the property upon his death to the defendant was, as to the defendant, extrinsic fraud which prevented a presentation at the trial of defendant's meritorious defense. Conceding that the facts are not similar, the underlying thought is the same in that case as in the instant case, wherein the plaintiff, by virtue of the false statements of the beneficiary, was prevented from setting up a real defense to the probate of his father's will. In each case, the party seeking the aid of equity had been deprived by the deceit of an opponent from properly presenting the real issues. The instant case is also somewhat similar in principle to the case of Ocean Ins. Co. v. Robert Fields, 2 Story (U.S.) 59 (Fed.Cas. No. 10,406), a case which involved a suit on an insurance policy in which the court held that the wilful concealment of the fact of the original fraud upon which the action to recover the insurance on a lost boat was based, was sufficient to warrant the aid of equity, since the fact of such original fraud if known to the defendant would have been a complete answer to the success of the suit."

It is argued that the allegations of fraud that are made by the complainant are insufficient because not made by her positively but only upon information and belief. Undoubtedly it is better and more effective pleading for a suitor to aver fraud in precise and unequivocal terms, and generally one charging another with fraud should not be permitted to take refuge behind allegations on mere information and belief, but with respect to the vital allegations of extrinsic or collateral fraud that have been mentioned and that constitute the saving features of this suit in equity, it is doubtful whether these averments could be made properly in any other way than upon the information and belief of the deponent, because from the very nature and source of much of the matter that is alleged in these regards the complainant must necessarily rely upon the statements of others and could not have no personal knowledge otherwise. Under these circumstances the allegations on information and belief are sufficient to overcome the motion that is made at this time to dismiss the bill of complaint and the suit alleged therein.

Coming now to a consideration of the second question for decision, it has been established for many years that there is a rule in the federal courts to the effect that the court will not decide a controversy when it can make no decision going to the real root of the matter without necessarily affecting the rights of parties not before the court. Mallow v. Hinde, 12 Wheat. 193, 6 L.Ed. 599.

There can be no doubt that if the complainant should establish the facts alleged in her complaint and obtain a decree pursuant to her demand the interests of her brother and the other legatees and beneficiaries residing in the state of Michigan would be substantially and materially affected by such course. Under her own allegations, her brother is entitled to the same share in the estate of Markham that she asserts, and if she were successful in maintaining her suit as alleged in the bill of complaint, the legacies of Louise Markham, Isa Markham, and E. S. Roe would fail and those persons would be wholly deprived of the interest in the property of the Markham estate which the questioned will gives them. These unavoidable eventualities that would follow any decree within the purview of the bill of complaint make it imperative that these beneficiaries be made suitors or parties therein. They are not merely proper and necessary parties; their presence in this court is indispensable to the entry of any

decree in this suit. Commonwealth Trust Co. v. Smith (C.C.A.9) 273 F. 1, affirmed by the Supreme Court 266 U.S. 152, 45 S.Ct. 26, 69 L.Ed. 219. The suit involves much more than the establishment and enforcement of a separate trust as to complainant's share in her father's estate, and it is illusory to assert that complainant's claims can be decreed in this suit without affecting or disturbing the rights and interests of the other nonresident persons who take solely under the questioned will, and while it is undoubtedly true that the main relief sought by the complainant is that the defendants be decreed to be trustees for her to the extent of a one-third interest in her father's estate at the time of his death, and be required to account to her for such interest, yet in order to obtain such relief and as a necessary premise and incident to it, the will of March 4, 1930, must be rendered infirm, inoperative, and ineffectual. In order for the court to so decree, it cannot avoid passing upon the absent Michigan legatees' rights, because their rights, that is, those other than Leigh Markham, are entirely dependent upon the testamentary capacity of Markham on March 4, 1930, and upon the validity of the will that he signed upon that date. The interests of the legatees who are absent are therefore so intermingled with and inseparable from the interests of those who are present and made parties that the court should not and cannot proceed without the Michigan beneficiaries being made parties to this suit. Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 80, 41 S.Ct. 39, 65 L.Ed. 145.

If the absent indispensable legatees are brought into the suit, they, or at least all of them except the brother of the complainant, must be arrayed on the side of the defendants, as their interests are undoubtedly in common with those who will resist and contest complainant's demand that the will of March 4, 1930, be declared ineffective. This would result in defeating the jurisdiction of this court, and therefore the bill of complaint must now be dismissed, and it is so ordered. Lee v. Lehigh Co., 267 U.S. 542, 45 S.Ct. 385, 69 L.Ed. 782; Steele v. Culver, 211 U.S. 26, 29 S.Ct. 9, 53 L.Ed. 74; Berg v. Merchant (C.C.A.6) 15 F.(2d) 990, rehearing in (C. C.A.) 16 F.(2d) 1013, certiorari denied 274 U.S. 738, 47 S.Ct. 575, 71 L.Ed. 1317; De Graffenreid v. Yount-Lee Oil Co. (C. C.A.5) 30 F.(2d) 574; Gage v. Riverside Trust Co. (C.C.Cal.) 156 F. 1002.