[Sac. No. 5052. In Bank.—February 24, 1937.]

BETTY BYRON PURINTON, a Minor, etc., Respondent, v. HARRY H. DYSON, etc., Appellant.

Crittenden & Hench and Scott Rex for Appellant.

Charles H. Vance, A. L. Cowell, Gumpert & Mazzera and C. H. Hogan for Respondent.

EDMONDS, J.—This action is in equity and was brought by respondent, who, it is conceded is a pretermitted heir of Adeline Potter, to recover her share of the estate of her ancestor which was distributed to Fred Fillmore Schaffer. Schaffer died before this action was brought and respondent named as defendants appellant Dyson, individually and as executor of Schaffer's will, and Carrie Sims, as special administratrix of Schaffer's estate. Respondent recovered judgment against the defendants named, and Dyson appealed.

Adeline Potter died testate in 1932, leaving as her only heirs Thomas G. Purinton, a son, and respondent, who is the daughter of a deceased son. By her will Mrs. Potter bequeathed $100 to her son Thomas Purinton and $50 to appellant Dyson. The residue of her estate was left to Fred Fillmore Schaffer, who was also named as executor.

Schaffer presented the will for probate by a petition in which he stated under oath that the only heir at law of testatrix so far as known to him was deceased's son, Thomas Purinton. The will was admitted to probate and Schaffer was

appointed executor. He qualified as executor and thereafter filed his verified first and final account and petition for distribution in which, under oath, he stated that the persons entitled to distribution of the estate were Thomas Purinton, appellant Dyson, and himself, who were the three beneficiaries of the will. In 1932 this account was settled and allowed and a decree of distribution was made by which the small legacies to Purinton and Dyson were ordered paid and the residue of the estate, approximating $9,000 in value, was distributed to Schaffer.

In the following year Schaffer died testate, leaving the bulk of his estate to appellant Dyson, who was named in his will as executor. This will was admitted to probate and Dyson was appointed executor. Carrie Sims later filed a contest of Schaffer's will which resulted in the revocation of its probate. She was then appointed special administratrix of Schaffer's estate and qualified as such, but a new trial of the contest was subsequently granted.

Respondent's case rests upon extrinsic fraud alleged to have been committed by Schaffer in conducting the probate proceedings in the estate of Adeline Potter without disclosing her relationship to the deceased and notifying the respondent of the proceedings. The complaint alleged that at the time Schaffer filed his petition for probate of the Potter will, he knew that respondent was the granddaughter of Mrs. Potter; that she was residing in Los Angeles, California; and that his failure to disclose her existence was for the purpose of defrauding respondent out of her share of the estate. More specifically, it is alleged that a corrupt agreement was entered into between Purinton, Mrs. Potter's son, and Schaffer, whereby Schaffer agreed that if Purinton did not notify respondent that her grandmother had died and allowed the estate to be distributed according to the terms of the will, that Schaffer would make a will in his favor.

The court found these allegations to be true. The case, therefore, presents a situation where according to the findings of the trial court an executor, who was practically the sole beneficiary of the estate, kept an heir in ignorance of the death of her ancestor "with fraudulent design and intent to gain for himself a share of said estate which rightfully and lawfully belonged to" such heir. The trial court also found that neither the respondent nor any member of her immediate

family had any knowledge or notice of the death of Mrs. Potter until the day the complaint was filed.

Appellant contends that Schaffer did not disclose respondent's existence because he was in ignorance of it. From this premise he argues that as the decree of distribution in the Potter estate was made by the court under the same mistaken belief, respondent can have no relief from the decree because it was not procured by extrinsic fraud. But the court found that Schaffer's actions were not due to any ignorance or mistaken belief but were in pursuance of a fraudulent plan to defraud respondent of her share of the estate. In other words, the findings of the court are that Schaffer's acts were those of commission and not those of omission. There was ample evidence to support these findings and they are conclusive upon this appeal. The legal question then presented is whether the acts of Schaffer as found by the trial court constituted extrinsic fraud which will allow respondent to maintain the action.

It is well settled that equity may afford relief from orders and decrees in probate proceedings for extrinsic fraud. (*Caldwell* v. *Taylor*, 218 Cal. 471, 475 [23 Pac. (2d) 758, 88 A. L. R. 1194].) But appellant insists that any fraud practiced by Schaffer was intrinsic. The theory of this contention is, principally, that fraud to be extrinsic must be practiced directly upon the plaintiff in such an action. He cites as authority for his position the language of the leading case of *United States* v. *Throckmorton,* 98 U. S. 61 [25 L. Ed. 93], where it was said that an action in equity will lie where "by some fraud practiced directly upon the party seeking relief against the judgment or decree that party has been prevented from presenting all of his case to the court". The rule laid down by that case this court said in *Caldwell* v. *Taylor, supra,* "has become the well recognized and standard definition of extrinsic fraud".

In the early case of *Sohler* v. *Sohler,* 135 Cal. 323, 326 [67 Pac. 282, 87 Am. St. Rep. 98], extrinsic fraud was said to consist "in the failure to give legal notice to the adversary, the prevention of him or his witnesses from attending the trial, and the like". In *Caldwell* v. *Taylor, supra,* where the entire subject was exhaustively considered, the court said: "The main requirement to establish extrinsic fraud is that the unsuccessful party was prevented by his

adversary from presenting *all* of his case to the court. One of the examples given is that of a party who is prevented from appearing in court.'' And in *Bankers Trust Co.* v. *Patton,* 1 Cal. (2d) 172, 173, 175 [33 Pac. (2d) 1019, 1020], the general rule was summarized as follows: ''It is assumed that the wilful suppression in bad faith of material facts in probate proceedings by which the plaintiff and other creditors would be deprived of property and assets to which they would otherwise become entitled in satisfaction of their claims would constitute an extrinsic fraud against which equity could grant relief by charging the distributees as trustees, even though the decree of distribution itself be not disturbed.''

However, it it is difficult to see how fraud could be practiced more directly upon one entitled to present his rights to a court than by keeping him in ignorance of the proceedings. It is true that in most cases of extrinsic fraud the defendant has said something directly to the person whose rights were involved amounting to representations that it was not necessary for such person to take any part in the proceedings. In other cases, acts have been held to amount to such representations. But the rule allowing the maintenance of an action in equity for extrinsic fraud should not be limited so strictly as to require as a basis evidence of representations made directly to the one defrauded.

In this case notice of the hearing of Schaffer's petitions was required to be served upon the heirs of the testator either personally or by mail. (Sec. 328, Probate Code.) Schaffer as the proponent of the will in the first instance and as the duly qualified and appointed executor thereof after it was admitted to probate, was charged with the utmost good faith to the heirs of the deceased and to the court. It was his duty to see that notice of the proceedings was given to those whom he knew to be heirs of Mrs. Potter. The same situation was considered in the case of *Zaremba* v. *Woods,* 17 Cal. App. (2d) 309 [61 Pac. (2d) 976]. There the executor of a will also presented a petition stating that the deceased left no heirs. It was claimed, as it is here, that his representation amounted to intrinsic but not extrinsic fraud. But the court held that the allegation constituted extrinsic fraud, saying: ''There is a clear line of demarcation, however, between a statement made in the petition for the probate of the will which would limit the giving of notices to heirs, and testimony

in court to the effect that there were no such heirs, after the heirs had been notified of the proceeding for the probate of the will, as provided by the different sections of the Probate Code.''

Whatever may have been the motive of Schaffer, whether it was induced by the agreement which the court found he made with Mrs. Potter's son, or by some other reason, his acts in suppressing all information concerning respondent and representing Thomas Purinton to be the only son of the deceased, amounts to fraud practiced directly against the respondent. They furnish abundant foundation for a judgment holding him to have been a trustee for the property which should have been distributed to the respondent but which he wrongfully received.

█ Finally, appellant contends if respondent is entitled to recover, the judgment rendered does not correctly fix the respective rights and liabilities of the parties. The record shows that at the time the judgment in this case was rendered, there had been no distribution of Schaffer's estate. Appellant Dyson insists that there can be no judgment recovered against him and Sims individually because they have not received anything from the Schaffer estate.

The judgment in an equitable action of this nature does not set aside the judgment or order attacked but holds the one who fraudulently secured the property under it as a trustee for the person defrauded. (*Sohler* v. *Sohler, supra; Simonton* v. *Los Angeles T. & S. Bank,* 192 Cal. 651, 658 [221 Pac. 368].) The plaintiff in such an action is also allowed an equitable lien on the property which the defendant secured, dependent upon its identification. (*Walsh* v. *Majors,* 4 Cal. (2d) 384 [49 Pac. (2d) 598].) Under the facts shown, Schaffer was a trustee for the respondent of the amount which he received from the Potter estate. This property never belonged to Schaffer and it therefore never became part of his estate and it is not chargeable with his debts or expenses of administration. The judgment ordered ''that said defendants forthwith pay over to the plaintiff'' the sum of $4,851 with interest amounting to $1,054 and costs ''and that execution be issued hereon . . . in favor of the plaintiff Betty Byron Purinton and against said defendants and against the property of the Estate of Fred Fillmore Schaffer, Deceased''.

The evidence shows that there was distributed to Schaffer from the estate of Mrs. Potter certain items of jewelry appraised at $50.25; household furniture appraised at $50; a lot appraised at $650, and cash in the amount of $8,490.78. The same articles of jewelry and the lot are inventoried in the Schaffer estate. But although Schaffer had more than $8,750 on deposit in Stockton banks at the time of his death, appellant contends that this money cannot be identified as having been received from the Potter estate, hence respondent cannot recover any money judgment. It would be a strange rule of law which, under these circumstances, would deny respondent relief and give to the legatees of Schaffer the money which he fraudulently secured.

However, the judgment rendered must be modified. "The property in the custody of the probate court is not subject to levy or forced sale, and any execution issued and sale thereunder are void." (11B Cal. Jur., p. 349.) Upon the facts as found by the trial court, respondent is entitled to a judgment against appellant Dyson, as executor of the last will and testament of Fred Fillmore Schaffer, Carrie Sims as the special administratrix of the estate of said deceased, and Dyson individually declaring that the respondent is the owner of an undivided one-half interest in and to the jewelry and household furniture and the real estate distributed to Schaffer by the decree of distribution made November 10, 1932, in the estate of Adeline Potter, and that at the time of his death he held the said property and also the sum of $4,245.39 with interest thereon at the rate of seven per cent (7%) per annum from November 10, 1932, in trust for the respondent. (*Walsh* v. *Majors, supra.*) The judgment is reversed with directions to the trial court to modify its judgment in accordance with the views herein expressed and enter judgment accordingly, respondent to recover costs on appeal.

Shenk, J., Langdon, J., Seawell, J., Curtis, J., Waste, C. J., and Thompson, J., concurred.