[Civ. No. 24840.   Second Dist., Div. One.   Dec. 23, 1960.]

RITA ROBINSON, Appellant, v. ALPHERIES A. ROBINSON et al., Respondents.

Rita Robinson, in pro. per., for Appellant.

William R. Freeman, in pro. per., Ives, Kirwan & Dibble and Anthony J. Ward for Respondents.

FOURT, J.—This is an appeal from a judgment of dismissal rendered after appellant had attempted three times to state a cause of action against the respondents.

In a second amended complaint the appellant alleged that she brought the action for herself and ''for the benefit of my three minor children'' and further alleged that she was a resident of Los Angeles County; that on January 13, 1943, defendant, Alpheries A. Robinson, falsely represented himself to her as a single person and that plaintiff married him on that date in New York; that he stated that a purported marriage of his to one Marion Brewington in 1934 in Philadelphia, Pennsylvania was of no effect because, among other reasons, Marion Brewington was married to Frank Campbell in 1927 and she was not divorced from said Frank Campbell at the time of their marriage; that on or about January 15, 1944, after Alpheries A. Robinson was inducted into the Army, Marion filed a claim for a family allowance and the allotment to plaintiff was stopped; that Alpheries A. Robinson told plaintiff that there was no marriage by him to Marion and that the claims of Marion were false and that he would clear up the matter later; that at the time of and prior to plaintiff's marriage to Alpheries A. Robinson she was possessed of certain described property; that the origin of said property dated back to her childhood and was her separate property; that before her marriage to Alpheries A. Robinson she had planned to sell out her furnished rooms and go to California by train and purchase income property; that after her marriage to Alpheries A. Robinson he told her that if she would change her plans and go to California by automobile by way of Florida and pick him up in Florida upon his discharge from the Army and take him to California that he would reimburse her for expenses when he secured work and her money ''would be frozen'' and that he would help her get income property; that she agreed and purchased a trailer and sold her furnished rooms and left for California in September 1945 by way of Florida; that when she got to Florida, Alpheries A. Robinson had lost his money in a dice game and added to her expenses and she then sold her property in Georgia to secure money with which to travel; that they arrived in California on February 2, 1946, and she loaned him money for tools and union dues and he told her that she could keep all of the money he

gave her which would be left over after payment of the bills; that when they separated in August 1955 he owed to her $900; that in April 1946, after an investigation, the Army told Alpheries A. Robinson that Marion's prior marriage to Frank Campbell was invalid because Campbell was already married at the time of his purported marriage to Marion and that Marion was the wife of Alpheries A. Robinson; that Alpheries A. Robinson told plaintiff he would go to court and prove that such was not the case; that from the rents and profits of her separate property she bought two parcels of real property in Los Angeles County and such parcels were her separate property; that Alpheries A. Robinson had given her a quitclaim deed of his rights in the said property; that Alpheries A. Robinson engaged an attorney in Philadelphia to establish that he had never married Marion; that Marion brought an action for divorce from Alpheries A. Robinson on about March 15, 1951; that on about April 9, 1951, Alpheries A. Robinson contracted a dermatitis of his hands and told the plaintiff that he would finish up the case against Marion when his hands recovered; Alpheries A. Robinson was disabled from work until 1955; for three years during his disabled period he went to college as a prelegal student; that defendant Bentley was a teacher of Alpheries A. Robinson; that Bentley represented Alpheries A. Robinson before the Industrial Accident Commission in August 1954 and Alpheries A. Robinson recovered a $9,600 award and "lifetime pension"; that Alpheries A. Robinson said that Bentley advised that he did not need a divorce from Marion; that Alpheries A. Robinson had said that he wanted a divorce from her, the plaintiff, that he would have Bentley draw up the papers and would make plaintiff sign them; that Alpheries A. Robinson was a witness in a case in which defendant, William R. Freeman, was the attorney; that plaintiff consulted an attorney and was told to get facts concerning her marital status by New York law; that plaintiff planned to go to New York in 1955 and Alpheries A. Robinson stated that Bentley would file an annulment action against Marion and establish that her claims were false; that plaintiff left for New York in August 1955; that about February 11, 1956, plaintiff received a letter from Alpheries A. Robinson seeking a false statement with reference to Marion; that she refused to give such a statement; that Alpheries A. Robinson was awarded a "default annulment, February 6, 1955"; that plaintiff secured a copy of the annulment complaint which contained false allegations and thereafter Alpheries A. Robin-

son became abusive to plaintiff; that she returned to Los Angeles in July 1956 and was fearful of Alpheries A. Robinson and lived away from him; that defendant, Freeman, served plaintiff with a divorce proceeding wherein Alpheries A. Robinson sought to have all of her property declared to be community property and that plaintiff be restrained from the use of it; that plaintiff could not borrow money against the property; that Alpheries A. Robinson, Bentley and Freeman conspired to mislead and deceive the courts and thereby procured a judgment against her interests and thereby used the courts to defraud her out of her property; that Alpheries A. Robinson caused Bentley to prepare and sign false allegations, "known to Mr. Robinson to be false and unknown to Mr. Bentley to be true," (reference being made to the annulment case file No. D 485922); that Bentley filed a false affidavit in the annulment case, "which was known to Mr. Robinson to be false and unknown to Mr. Bentley to be true"; that Alpheries A. Robinson unlawfully procured a default; that the divorce proceeding by Alpheries A. Robinson against plaintiff was brought to trial before Judge Gitelson on April 30, 1958; that Freeman in the trial of that case misled the trial judge and thereby the judge rejected her testimony; that Freeman filed a "summary" with the judge on the first day of trial in which he falsely stated that Alpheries A. Robinson had made certain payments; that Freeman made false statements to the judge about the marriage status of Alpheries A. Robinson and Marion; that Freeman made false statements to the judge in argument about the plaintiff; that Alpheries A. Robinson gave false testimony at the trial; that Freeman made improper objections to her introducing certain evidence and the court believed him and was deceived thereby; that the present action "is not upon the judgments mentioned herein" but upon the acts committed in procuring the judgments which resulted in her losing her divorce action to her damage in the sum of $150,000.

The demurrer of Bentley in short sets forth that the second amended complaint does not state facts sufficient to constitute a cause of action; that the court has no jurisdiction over the matter in that all of the contentions have been passed upon in prior actions and that this action is a collateral attack on said final judgments; that it does not state a cause of action on behalf of the three children of plaintiff; that it is uncertain in that it cannot be ascertained how Alpheries A. Robinson caused Bentley unlawfully to prepare and sign false allega

tions and whether said allegations were known by Bentley to be false; that it is uncertain in that it cannot be determined how Bentley filed a false affidavit and whether Bentley knew it to be false; that it cannot be ascertained how Bentley conspired with his codefendants or how he deceived the courts or how he was to gain from any conspiracy; that it cannot be ascertained whether Bentley was alleged to have been negligent or careless or whether he was alleged to have known the facts which were alleged to be false; that it cannot be ascertained what connection Bentley had in the actions and whether he was an attorney in said actions and if so for what party; that it cannot be ascertained how the damages are computed; that it cannot be determined whether the judgments are final or whether plaintiff has taken any action to have said judgments set aside; that it cannot be determined what, if any, duties were owed by Bentley to plaintiff or what rights of plaintiff were violated by Bentley.

In brief, Bentley was the attorney for the former husband of plaintiff in securing an annulment for him from a former wife, Marion. Bentley apparently never represented the plaintiff and she was a complete stranger to the annulment action. If the plaintiff is suing the defendant Bentley for negligently representing her husband in the annulment action (malpractice) she has entirely failed to allege some if not all of the required allegations required in such an action. If the plaintiff is suing upon the theory of a conspiracy, the complaint should allege the formation and operation of the conspiracy, the wrongful act or acts of any conspirators pursuant thereto and the resulting damage. (Witkin, California Procedure, Pleading, § 469(b), p. 1457.)

"A conspiracy is not actionable unless the alleged combination results in the perpetration of an unlawful act or some injurious act by unlawful means." (*Perry* v. *Meikle*, 102 Cal.App.2d 602, 606 [228 P.2d 17].)

The second amended complaint does not comply with the minimum requirements with reference to a charge of a conspiracy. Bentley had nothing to do with the divorce action brought by Alpheries A. Robinson against the plaintiff.

Furthermore, "The elements of actionable fraud, which must be pleaded and proved if a plaintiff is to prevail, consist of a false representation of a material fact, made with knowledge of its falsity and with the intent to induce reliance thereon, upon which plaintiff justifiably relies to his injury."

(*Wishnick* v. *Frye,* 111 Cal.App.2d 926, 930 [245 P.2d 532] ; *Cohen* v. *Citizens National Trust etc. Bank,* 143 Cal.App.2d 480 [300 P.2d 14].) Nowhere is it alleged that Bentley knew of any alleged false statement of his client and in fact the allegation is that it was "unknown to Mr. Bentley to be true."

The plaintiff alleges in effect that she knew of the facts alleged in this complaint at all of the other occasions in question and in particular at the time of the filing and the trial of the annulment and divorce actions.

In *Howard* v. *Howard,* 27 Cal.2d 319, 321 [163 P.2d 439], it is stated:

". . . 'Fraud or mistake is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court. (*Caldwell* v. *Taylor,* 218 Cal. 471 [23 P.2d 758, 88 A.L.R. 1194] ; *Tracy* v. *Muir,* 151 Cal. 363 [90 P. 832, 121 Am.St.Rep. 117] ; *Bacon* v. *Bacon,* 150 Cal. 477 [89 P. 317] ; *Sohler* v. *Sohler,* 135 Cal. 323 [67 P. 282, 87 Am.St.Rep. 98]. See 23 Cal.L.Rev. 80; 9 Cal.L.Rev. 156). If an unsuccessful party to an action has been kept in ignorance thereof (*Purinton* v. *Dyson,* 8 Cal.2d 322 [65 P.2d 777, 113 A.L.R. 1230] ; *Zaremba* v. *Woods,* 17 Cal.App.2d 309 [61 P.2d 976]) or has been prevented from fully participating therein (*Caldwell* v. *Taylor, supra*), there has been no true adversary proceeding, and the judgment is open to attack at any time. A party who has been given proper notice of an action, however, and who has not been prevented from full participation therein, has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary. (*Tracy* v. *Muir,* 151 Cal. 363 [90 P. 832, 121 Am.St.Rep. 117] ; *Abels* v. *Frey,* 126 Cal.App. 48 [14 P.2d 594] ; *Langdon* v. *Blackburn,* 109 Cal. 19 [41 P. 814].) Fraud perpetrated under such circumstances is intrinsic, even though the unsuccessful party does not avail himself of his opportunity to appear before the court. Having had an opportunity to protect his interest, he cannot attack the judgment once the time has elapsed for appeal or other direct attack. (*Langdon* v. *Blackburn,* 109 Cal. 19 [41 P. 814] ; *Tracy* v. *Muir,* 151 Cal. 363 [90 P. 832, 121 Am.St.Rep. 117] ; see *Eichhoff* v. *Eichhoff,* 107 Cal. 42, 48 [40 P. 24, 48 Am.St.Rep. 110].)' (*Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105].)"

It would appear that this is a clear case of the plaintiff's attacking collaterally the judgment in the divorce case.

Appellant had three chances to state a good cause of action. It is reasonable to assume from the entire circumstances of

the case and a reading of the three complaints that plaintiff could never state a good cause of action against either Bentley or Freeman. (See *Ruinello* v. *Murray,* 36 Cal.2d 687 [277 P.2d 251]; *Wing* v. *Forest Lawn Cemetery Assn.,* 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120].)

In this case the appellant in her notice of appeal set forth that she appealed "from the Order of Dismissal of the above entitled Court entered on the 29th day of February, 1960 in Book 3582, page 171, dismissing the above entitled action, . . ." The judgment of dismissal of the case against Byron R. Bentley was entered on February 29, 1960, in Judgment Book 3899, page 142. The interlocutory judgment of divorce secured by Alpheries A. Robinson against plaintiff in case numbered D 505892 was recorded in Judgment Book 3582, at page 171. In other words, it appears that appellant here intended to appeal from the judgment of dismissal in the cause against Bentley but inadvertently or for some other reason recited an incorrect book and page entry for that particular judgment. We have treated the reference to the book and page in the notice of appeal as surplusage.

However, and to the end that there will be no mistake in the matter with reference to the cause against William R. Freeman, it is noted that the notice of appeal makes no reference to any judgment or dismissal in that cause either by date, filing or entry in any book or page or otherwise. The judgment in the Freeman cause was signed and filed on March 15, 1960, and entered in Judgment Book 3912, page 079 on March 17, 1960. The notice of appeal refers to "the Order," in the singular and obviously refers to the judgment dismissing the cause against Bentley and not to the judgment dismissing the cause against Freeman.

For the reasons stated the judgment appealed from is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 15, 1961.