[Civ. No. 11884.   First Dist., Div. One.   Feb. 10, 1942.]

CHARLES HEWETT et al., Respondents, v. W. J. LIN-
STEAD et al., Appellants.

Hale McCowen for Appellants.

Thomas & Thomas and M. Anderson Thomas for Respondents.

PETERS, P. J.—This action was instituted by plaintiffs for the purpose of impressing a trust on a portion of the property distributed to defendants as the sole heirs of George Golden, deceased. This relief is sought on the ground that the decree of distribution was procured through mistake and a species of extrinsic fraud. This appeal is prosecuted by defendants from a judgment for plaintiffs on a bill of exceptions.

The main point urged for a reversal is that the facts alleged, proved and found do not support the judgment.

It was alleged, proved and found that George Golden was predeceased by his wife Ellen Hewett Golden; that plaintiffs are the heirs at law, of Ellen Hewett Golden; that a portion of the estate of George Golden consisted of property, which, during the lifetime of his wife, was community property; that plaintiffs reside without the State of California; that none of the plaintiffs had any actual knowledge of the death of George Golden until after the final decree of distribution in his estate; that in the petition for probate defendants were named as the heirs at law, and the only heirs at law of Golden; that by the final decree of distribution in Golden's estate the entire estate was distributed to defendants, who are the three surviving brothers of George Golden, and a niece, who is the daughter of a predeceased sister of Golden; that the niece, Margaret Holt Hauser, acted as administratrix of the estate. Plaintiffs first learned of the facts after the final decree of distribution had been entered, but while an appeal was pending by a third person. They immediately moved under section 473 of the Code of Civil Procedure to set the decree aside. This relief was granted in the trial court, but the order was annulled on certiorari. (*Linstead* v. *Superior Court*, 17 Cal. App. (2d) 9 [61 Pac. (2d) 355].) That decision became final in December of 1936, and this action was instituted shortly thereafter.

Plaintiffs as the heirs at law of the predeceased wife of Golden, were entitled, of course, to one-half of that portion of his estate that consisted of community property under the provisions of section 228 of the Probate Code. It is admitted that in the estate proceeding all required statutory notices were given.

The trial court held that defendants held a portion of Golden's estate distributed to them in trust for plaintiffs. There is no finding, and it is not contended, that defendants had actual knowledge of the existence of plaintiffs. Certain facts are alleged and found which plaintiffs contend are sufficient to make a case on the ground of extrinsic fraud. These facts will be considered after first disposing of plaintiffs' contention that in the absence of any fraud whatsoever distribution to the heirs of George Golden to the exclusion of Ellen Golden's heirs, who did not learn of the death of Golden until after distribution, constituted mistake from which relief in equity may be had. In this connection plaintiffs place their reliance squarely upon the provisions of section 2224 of the Civil Code. That section provides that: ''One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.''

We are thus faced with the problem as to whether, when property is erroneously distributed to certain persons (who, for the purposes of this portion of the opinion we will assume had no knowledge of the existence of other heirs) and all the statutory notices are given, and there is no element of extrinsic fraud, and the decree has become final, the persons who were excluded from the decree may successfully impose a trust on the property in the hands of the distributees on the sole ground that such distributees have received the property by reason of a ''mistake'' within the meaning of section 2224 of the Civil Code, *supra*. The cases clearly establish the true rule to be that where the distributees are innocent of any wrongdoing, the excluded heirs may not successfully impose a trust on the ground of such ''mistake.'' The case of *Lynch* v. *Rooney*, 112 Cal. 279 [44 Pac. 565], involved exactly the same factual situation as exists in the instant case. In that case an heir did not learn of the death of his intestate until

after distribution. The distributee and the administrator had acted in good faith, not knowing that the heir survived the decedent. The trial court imposed a trust under section 2224, Civil Code, *supra*. The Supreme Court expressly rejected the contention that the heir was entitled to impose a trust under section 2224. In so holding the court pointed out that the decree of distribution, not having been obtained by fraud, was final and conclusive as to who were the proper heirs; that if a trust were imposed it would in effect be setting aside the findings of the decree; that, "If such a thing could be done the stability of judgments and decrees would be a thing of the past"; that, "Decrees of distribution would be as unstable as the sands, for omitted heirs from such decrees would be seeking to have involuntary trusts declared thereon at most inopportune times, and in direct opposition to the law as declared by section 1908 of the Code of Civil Procedure pertaining to the conclusiveness and finality of judgments and decrees." (p. 287.)

The above case does not stand alone. In *Mulcahey* v. *Dow*, 131 Cal. 73 [63 Pac. 158], the widow was the sole distributee of the estate of her husband. She did not inform heirs living in distant states of the death of her husband. There was some evidence from which it was claimed it could be inferred she knew of the existence of such heirs. These heirs sought to impose a trust under section 2224 and were nonsuited. The judgment of the trial court was affirmed. The Supreme Court held that a final decree of distribution, when the proper statutory notices are given, is conclusive on the whole world; that heirs who have constructive knowledge of the decree are as much bound by it as those who have actual knowledge; that under the law every person, heir or creditor, who has a claim against the estate must present such claim in the manner and within the time provided by statute; that, whether he appears and presents his claim, or fails to appear, as long as such failure is not the result of acts of the person who secures distribution, the action of the court is equally conclusive. The court commented on the evidence as follows (p. 78): "There is some general evidence tending in an unsatisfactory way to show that Elizabeth Waters knew of the existence of these plaintiffs several years prior to the death of her husband. There is also some evidence showing that she told W. H. Metson, an attorney at law who prepared the petition for

letters of administration in behalf of Grant and Pennell, petitioners for letters, that her husband had no relatives; and this is all the evidence of fraud that we can find in the record. The showing made is too weak to stand alone. It would not support a judgment if one rested upon it. The fact that Elizabeth Waters did not inform these relatives, living in different states, of the death of her husband, is not material here. No legal duty devolved upon her to furnish them with that information. Again, there is nothing to indicate that she acted in bad faith at any stage of the administration, or made the statements to Metson with the purpose or design of defrauding anybody, or of imposing upon the court. There is no evidence showing that she knew these plaintiffs were entitled to any part of the estate as heirs at law of her husband.''

A similar holding was made in *Beltran* v. *Hynes*, 40 Cal. App. 177 [180 Pac. 540]. In that case an heir of the decedent sought to maintain an action to impose a trust where the heir was admittedly entitled to share in the estate but resided in Mexico and had no knowledge of the death of her intestate. The estate had been distributed to a nephew of the deceased. In upholding the action of the trial court in sustaining a demurrer to a complaint alleging these facts this court stated (p. 178) :

''No claim is made that due and legal notice as provided by law was not given of the hearing of the petition for distribution, nor is there any claim of the existence of any fiduciary relation existing between plaintiff and defendant, or of extrinsic or collateral fraud. Under these circumstances the demurrer was rightfully sustained. Defendant was under no legal duty to notify plaintiff of the death of deceased, even assuming that he knew the plaintiff (*Mulcahey* v. *Dow,* 131 Cal. 73 [63 Pac. 158]) ; and proper notice having·been given of the hearing, plaintiff is barred by the decree. (*Langdon* v. *Blackburn,* 109 Cal. 19 [41 Pac. 814] ; *Warren* v. *Ellis,* 39 Cal. App. 542 [179 Pac. 544].)''

In *Monk* v. *Morgan,* 49 Cal. App. 154 [192 Pac. 1042], the court declared that an administrator and an heir does not in either capacity, owe to his coheirs any further duty of informing them of the death of the intestate and of the probate proceedings than that afforded by the giving of the statutory notices. The court went so far as to hold that such rule applied even where the distributee and administrator had actual

knowledge of the existence of out-of-state heirs, and deliberately failed to notify them for the purpose of securing the estate for himself. It is to be noted that in the concurring opinion of Waste, P. J., he dissented from the above holding solely on the ground that a duty to notify out-of-state heirs exists when the administrator has knowledge of their existence —but he clearly implied that no such duty exists where the heir and administrator acts in good faith.

These cases establish the rule to be that where a distributee is ignorant of the existence of an heir, and such heir is excluded from the decree of distribution, and all statutory notices have been given, there has been no "mistake" that will warrant relief under section 2224 of the Civil Code.

This does not mean that mistake unconnected with fraud will not warrant relief under the proper circumstances. The type of mistake intended by section 2224 is well illustrated by the case of *Bacon* v. *Bacon*, 150 Cal. 477 [89 Pac. 317], so strongly relied upon by plaintiffs in the present case. In that case the will that was presented for probate, and the will that was probated, gave to plaintiff a legacy of ten thousand dollars. Typewritten copies of this will were furnished interested parties, including plaintiff, in which, by mistake of a copyist, the word "ten" was typed as "two." As a result of this error the will was represented to all parties and to the court as giving a legacy of only two thousand dollars to plaintiff. This mistake was carried through all probate proceedings so that by the decree of distribution two thousand dollars were distributed to plaintiff, the balance of eight thousand dollars of her legacy being distributed to the residuary legatees. The court imposed a trust on the interest of the residuary legatees. In so doing the court emphasized that not only was the plaintiff free from any fault, but also that the mistake was made by the executors, one of whom was her husband, who owed her a duty of good faith. The plaintiff relied on the mistaken statements of the executors who were also the residuary legatees. The court held that in order to secure relief for fraud or mistake the situation must be one where the legatee is kept in ignorance of the true fact by some act of the distributee. The court emphasized that the legatee had been prevented from securing her full legacy by the affirmative acts of the residuary legatees. That is an entirely different type of "mistake" from that involved in the instant case.

Here the defendants had no knowledge of the existence of plaintiffs. They owed them no duty to search them out. All notices were given. There was no act of defendants that tended to keep the plaintiffs in ignorance. There was no reliance by plaintiffs on any act of the defendants. Such a "mistake" is not contemplated by section 2224. It must be held, therefore, that relief may not be had in equity from a decree of distribution on the ground of mistake where all statutory notices are given and where the omitted heir fails to learn of the intestate's death, but the distributees, in good faith, are unaware of the existence of the omitted heir.

The above discussion has been predicated on the theory that defendants were ignorant of the existence of plaintiffs and acted in good faith. Plaintiffs contend, however, that, under the facts, defendants were chargeable with knowledge that George Golden was married, and were under a duty to ascertain whether his wife was dead, and, if so, whether she had left heirs. Although there is some confusion in the cases, we agree with plaintiffs that the better rule is that where a legatee knows of the existence of other heirs, and, for the purpose of defrauding such heirs and benefiting himself, fails to notify the court of the existence of such heirs, and knowingly files false petitions with the court representing there are no such heirs, he is guilty of extrinsic fraud warranting the imposition of a trust on the fraudulent distributee's interest. In *Mulcahey* v. *Dow, supra,* it was impliedly held, and in *Monk* v. *Morgan, supra,* it was expressly held, that even in such a case the fraud is intrinsic and is not extrinsic. The better-reasoned cases, however, are in accord with the rule as above stated. (See, *Caldwell* v. *Taylor,* 218 Cal. 471 [23 Pac. (2d) 758, 88 A. L. R. 1194], at p. 476, *et seq.,* where the cases are collected and discussed; *United States* v. *Throckmorton,* 98 U. S. 61 [25 L. Ed. 93] ; see, also, cases collected in annotations in 113 A. L. R. 1235; 88 A. L. R. 1201.) Thus, in *Sohler* v. *Sohler,* 135 Cal. 323 [67 Pac. 282, 87 Am. St. Rep. 98], a one-eighth interest in decedent's estate was distributed to one Reuss, who it was alleged by the executrix, the wife of decedent, was the son of decedent. This fact was untrue and known to be so by both the executrix and Reuss, but not to the plaintiffs, the minor children of the decedent. It was held that this constituted extrinsic fraud. The court emphasized that the fraud was accomplished by

the fraudulent connivance of the executrix who was the mother of the defrauded plaintiffs, and who had their actual custody and control and who was chargeable with all the high duties pertaining to that relationship. It was held that she was under a duty to disclose to the court all the facts, and her fraud in concealing the truth from plaintiffs and the court, and her conspiring with Reuss constituted extrinsic fraud.

In *Simonton* v. *Los Angeles T. & S. Bank,* 192 Cal. 651 [221 Pac. 368], the executor concealed certain property from the probate court, did not account for the same, and appropriated such property to her own use. It was held that failure knowingly to include the property in the estate of decedent was extrinsic fraud.

In *Purinton* v. *Dyson,* 8 Cal. (2d) 322 [65 Pac. (2d) 777, 113 A. L. R. 1230], an equitable action was brought by respondent to recover a certain share of decedent's estate which had been distributed to one Schaffer. In the petition for probate of decedent's estate, Schaffer stated under oath that the only heir of decedent so far as known to him was decedent's son, Purinton. Schaffer was appointed executor. Later he filed a petition for distribution in which he stated the persons entitled to distribution were Purinton, Dyson and himself who were the three beneficiaries of the will. Decree was so entered. Respondent alleged that at the time the above petitions were filed, Schaffer knew respondent was an heir of the decedent, and that he failed to disclose this fact so as to defraud her out of her share. In fact, a deal was made between the three above-mentioned beneficiaries whereby it was agreed that if Purinton did not notify respondent of the death of decedent, that Schaffer would make a will in favor of Purinton. The court held the acts of Schaffer amounted to extrinsic fraud. The court stated (p. 326) : "It is true that in most cases of extrinsic fraud the defendant has said something directly to the person whose rights were involved amounting to representations that it was not necessary for such person to take any part in the proceedings. In other cases, acts have been held to amount to such representations. But the rule allowing the maintenance of an action in equity for extrinsic fraud should not be limited so strictly as to require as a basis evidence of representations made directly to the one defrauded." The court also quoted from *Bankers Trust Co.* v. *Patton,* 1 Cal. (2d) 172, 175 [33 Pac. (2d) 1019], as follows:

" 'It is assumed that the wilful suppression in bad faith of material facts in probate proceedings by which the plaintiff and other creditors would be deprived of property and assets to which they would otherwise become entitled in satisfaction of their claims would constitute an extrinsic fraud against which equity could grant relief by charging the distributees as trustees, even though the decree of distribution itself be not disturbed.' " Based on this reasoning, the court held that the acts of Schaffer amounted to extrinsic fraud and imposed a trust on the property distributed to him. (See, also, *Zaremba* v. *Woods,* 17 Cal. App. (2d) 309 [61 Pac. (2d) 976].)

These cases establish that, where the executor or heir knowingly suppresses evidence of the existence of other heirs with intent to defraud them, the fraud is extrinsic warranting the equity court in granting relief, but where the executor or heir acts in good faith the decree is final and conclusive and equity is without power to impose a trust.

Plaintiffs contend that the facts of the instant case show that the defendants knowingly suppressed the true facts from the probate court. What does the record show in this regard? The complaint alleges that "many many years prior to the time the said George Golden came to California, he had resided in an Eastern State"; that he left that state in the company of Ellen or Helen Hewett; that the two came West together and finally moved to Fort Bragg, California; that they were husband and wife; that they resided in Fort Bragg for many years prior to the time they died; that the defendants "W. J. Linstead, Ed Linstead, Frank Linstead and Margaret Holt Hauser knew that the said George Golden and the said Ellen Hewett, also known as Helen Hewett, were so residing together in the County of Mendocino, during said time, and that they also knew that the heirs of said Ellen Hewett, also known as Helen Hewett, and as Ellen Hewett Golden were entitled to share in the distribution of the property of said George Golden, Deceased."

It is to be noted that it is *not* alleged that defendants knew plaintiffs were the heirs of Ellen, nor that they knew that there were heirs of Ellen. The complaint was the fourth filed.

The court did not find that the three Linsteads knew anything at all about the existence of plaintiffs. As to Margaret Holt Hauser, niece of the decedent and administratrix of his

estate, it did find that she had actual knowledge that George Golden lived for more than thirty years at Fort Bragg, that "many years prior to the death of said George Golden the said Margaret Holt Hauser visited the said George Golden at his home in Fort Bragg, Mendocino County, California, and at the time saw the woman in the home of the said George Golden but never thereafter made further investigation so far as the evidence shows to ascertain the relation between the said woman and the said George Golden and never thereafter made any effort to find or ascertain the heirs of the said woman, who would be entitled to share in the community property belonging to the said George Golden, etc., and the said Ellen Golden at the time of the death of the latter."

The court further found that "notwithstanding such knowledge on the part of said Administratrix, she at all times represented to the probate court in which the estate of said George Golden, alias, was being probated, that she and her uncles, W. J. Linstead, Ed Linstead, and Frank Linstead were the only heirs of said deceased."

There is a further finding that when Mrs. Hauser went to Fort Bragg to see her uncle she inquired where he lived, and then went to his home; that "the woman she saw on that occasion came out of the Golden home and after remaining on the front porch for a short time went back into said home, and did not again appear while Mrs. Hauser was there, and it appears from Mrs. Hauser's testimony that she never thereafter made any effort to learn who this woman was, or what relation if any, she sustained to the said George Golden."

In the findings there is not one word that connects the three Linsteads with any knowledge of this occurrence. The evidence appearing in the bill of exceptions, which recites that it contains a "statement of all the evidence in the case and of all proceedings had therein," would not support broader findings than those above-quoted. Mrs. Hauser testified that she had seen her uncle, George Golden, but once in her life, and that was upon her visit to Fort Bragg; that the visit occurred in 1912; that, "After reaching Fort Bragg I went to his home and met him outside of the house where we talked for a short time. While we were talking a woman came out of the house onto the porch and then went back inside. I do not know whether she was living there or not. I never learned the woman's name as my uncle did not introduce us. I never knew that he was married.

"I did not then, or later, make any inquiry whether he was married or not, and did not ask him anything about the woman I saw on the porch of the house. I never tried to find out who that woman was. My uncle and I never corresponded and the only time I ever saw him was for those few minutes in 1912."

Under these circumstances, giving the findings the strongest interpretation in favor of plaintiffs, as we must, it is found that Mrs. Hauser visited her uncle in 1912, saw him for a moment or two, saw a woman come out of the house and then return inside. George Golden died in 1932. Between 1912 and 1932 Mrs. Hauser never saw her uncle again, nor did she correspond or hear from him. Under such circumstances, the trial court concluded that she was guilty of fraud in failing to remember the presence of the woman, in failing to assume or make inquiry as to whether she was his wife, in failing to ascertain in 1932 who the woman was, and in failing to ascertain that she was Golden's wife, in failing to discover that part of the estate was community property of George Golden and the woman, in failing to discover that this woman had predeceased Golden, and in failing to discover that plaintiffs were the heirs of the predeceased wife. To so hold would be in effect to rule that an administratrix is under a positive duty at her peril to discover the existence of possible heirs of whose existence she has no reasonable ground to suspect. Certainly, the 1912 visit and the fleeting view of a woman on the porch did not give her knowledge that Golden was married, that there was community property, that the wife had predeceased him, and that plaintiffs were the wife's heirs. To hold that the administratrix is guilty of extrinsic fraud under such circumstances, in not making inquiry for possible heirs, is to do violence to the many decisions heretofore cited. No other conclusion is possible but that defendants were chargeable with no duty owed to plaintiffs under the circumstances, and certainly were not guilty of acts sufficient to constitute extrinsic fraud.

For the foregoing reasons the judgment must be and is reversed.

Knight, J., and Ward, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 2, 1942.