[Civ. No. 11971. First Dist., Div. One. Oct. 17, 1942.]

GLADYS ROSENBAUM et al., Respondents, v. ESTATE OF ELLIOTT B. TOBIAS, Deceased, et al., Appellants.

William Klein and William F. Herron for Appellants.

Edward B. Dienstag and Marcel E. Cerf, Robinson & Leland for Respondents.

WARD, J. — This appeal is from a judgment in a suit attacking a certain probate proceeding—on the ground that the filing therein of a creditor's claim by one Dr. Elliott B. Tobias was affected with extrinsic fraud. By the judgment the court directed that Sylvia Wenger, individually and as administratrix of the estate of said Tobias, deceased, pay and restore to the Wells Fargo Bank & Union Trust Company, as trustee under the last will and testament of Philip Wenger, deceased, the amount received in payment of such claim, together with interest; and if such amount cannot be recovered from the estate of said Tobias "that plaintiffs have and recover from defendant, individually and as such administratrix, for the benefit of said trust estate, the sum of Twenty-five Hundred Dollars ($2500.00) . . . to be held and disbursed pursuant to the terms of said trust."

The facts out of which the present action arose are as follows: The defendant Sylvia Wenger is the sister of Elliott B. Tobias and the administratrix of his estate. Dr. Tobias attended Philip Wenger, a widower, professionally during his lifetime, and in conjunction with the Wells Fargo Bank & Union Trust Company, was named as executor and trustee of his estate. Sylvia Wenger, in addition to being the sister of Dr. Tobias, is the wife of Philip Wenger's brother, Sam. Gladys Wenger Rosenbaum and Leland Wenger, plaintiffs herein, are the two children of Philip Wenger, who were at the time of his death aged eighteen and nine years old respectively; Gladys Wenger was at the time of her father's death unmarried. Philip Wenger's estate was left to his two children in equal shares, a trust instrument providing for payment to each of them quarterly of the income on his or her half of the estate. The trust was to terminate as to each child when he or she reached the age of thirty-five years, at which time the corpus belonging to such child was to be distributed.

On September 27, 1932, the day following Philip Wenger's death, Dr. Tobias verified a petition for letters of guardianship as to the two children, which was filed on September 28th. He alleged that he had been a friend of the minors for a long time; that his sister had married their uncle; that the children were more or less directly under his care and control and that Gladys had nominated him as her guardian. Sam Wenger, the uncle of the children, was appointed the guardian of Leland; Gladys having married during the

month after her father's death, no guardian was appointed for her.

On the day after Philip Wenger's funeral Dr. Tobias talked with Gladys Wenger and Harry Rosenbaum (who subsequently married Miss Wenger), stating to them that he should be paid a couple of hundred dollars for professional services rendered Gladys' father, but suggested that he put in a claim against the estate for $2,000 which would take care of professional services by him to Leland and Gladys for the remainder of their lives. Rosenbaum testified in this connection: ". . . he also cautioned me not to discuss this or mention it to anyone because, he said, if it got back to the bank, they wouldn't appreciate the services or the attitude he was taking, and he said they might interpret it in a different way. He said, 'This way I am saving you a lot of court expenses, rigmarole and red tape.'" The next day Tobias informed Gladys and her fiance that some extraordinary services might be required of him in caring for the former and her brother Leland "and it would be best if it were $3000 because then I would feel I was being compensated for my services and wouldn't feel like slighting the kids." A claim was filed in this amount, the itemization of which, attached thereto, showed office, home, hospital and emergency calls, etc., for Philip Wenger, his deceased wife and his two children aggregating the sum of $3,367.50, which amount was ostensibly reduced to the $3,000. Dr. Tobias represented to his co-executor that the claim was "fair, true and correct," and the bank finally agreed to approve the same if it met with the approval of Gladys, then Mrs. Rosenbaum, and Sam Wenger, the guardian of Leland. There is testimony in the record that Tobias told Rosenbaum: "'The claim is going to be presented to you kids for signature, and I would suggest signing it,' he says, 'Don't pay any attention to the form in which it is written up because the agreement that you and I have cannot be shown in the claim.'" The claim was finally approved by the bank and Tobias, as executors, and paid.

Dr. Tobias died in 1939, and Gladys Rosenbaum and Leland Wenger filed a claim against his estate based upon the aforesaid payment of the doctor's claim against their father's estate. The claim was rejected by the administratrix Sylvia Wenger, and the present action was brought. Subsequently Sylvia Wenger filed a petition for ratable dis-

tribution of her brother's estate covering the major portion thereof. In the petition she set forth among various other matters, certain suits which had been brought against her on promissory notes executed by her and her husband; that she "had no defense thereto, in consequence of which, and with the knowledge and consent of said Phil W. Tobias, [her brother and the only other heir to the estate], the said Sylvia Wenger settled the said suits." She further set out in part the terms of an agreement between her brother and herself with reference to the distribution of the estate, and stated that the claim of Gladys Rosenbaum and Leland Wenger was rejected. The bulk of the estate, consisting of real property, shares of stock in various corporations, personal property and cash, was thereupon distributed. Sylvia Wenger then succeeded in having her bond as administratrix reduced from $40,000 to $5,000, her petition in that regard stating "that suit [the present ]has been filed upon said claim [Rosenbaum and Wenger] and said suit is now pending and undetermined." All of the above proceedings took place with the knowledge of Sylvia Wenger as administratrix of her brother's estate.

There is ample evidence herein to sustain the finding that the filing of the claim by Tobias comprised a fraud upon the Philip Wenger estate and the heirs thereof "to the extent and in the amount that said claim exceeded the reasonable value of the services actually rendered by said Elliott B. Tobias, as set forth in said complaint; that said claim was excessive in the sum of Twenty-six hundred Dollars ($2600.00)." The evidence shows that the services rendered Philip Wenger by Tobias were only a minor fraction of those enumerated in this claim; this was also the case with regard to services purportedly rendered Mrs. Wenger, who had been almost exclusively under the care of another physician. The claim showed a charge for professional services to Gladys and Leland of only $30.

The law requires something more than that a claim is false. Ordinarily the approval by executors, heirs, guardians and the court is sufficient in law, unless in an equitable proceeding there is a substantial showing of extrinsic fraud.

If a judgment is obtained by fraud in matters outside the issues to be adjudicated—as by preventing a party who has a meritorious valid defense from appearing and contesting the issue—equity will interfere to right the wrong. (*Oli-*

*vera* v. *Grace,* 19 Cal.2d 570 [122 P.2d 564].) As stated in *Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105]: "Fraud or mistake is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court [citing cases]." If an opportunity is given by proper notice, and a party fails to defend, the fraud, if any, usually is held to be intrinsic. (*Olivera* v. *Grace, supra.*) The invocation of equity is warranted where one, holding a confidential relationship with a person and charged with a duty to him, for his own gain induces him not to protect his interests in a legal proceeding. (*Purinton* v. *Dyson,* 8 Cal.2d 322 [65 P.2d 777, 113 A.L.R. 1230]; *Bankers Trust Co.* v. *Patton,* 1 Cal.2d 172 [33 P.2d 1019]; *Zaremba* v. *Woods,* 17 Cal.App. 2d 309 [69 P.2d 976]; *Bacon* v. *Bacon,* 150 Cal. 477 [89 P. 317].)

In *Hewett* v. *Linstead,* 49 Cal.App.2d 607 [122 P. 2d 352], an action to impress a trust on property distributed to heirs on the ground that the decree of distribution was procured through mistake and extrinsic fraud, this court, citing and discussing a number of cases, said (pp. 613, 615): "Although there is some confusion in the cases, we agree with plaintiffs that the better rule is that where a legatee knows of the existence of other heirs, and, for the purpose of defrauding such heirs and benefiting himself, fails to notify the court of the existence of such heirs, and knowingly files false petitions with the court representing there are no such heirs, he is guilty of extrinsic fraud warranting the imposition of a trust on the fraudulent distributee's interest. . . . These cases establish that, where the executor or heir knowingly suppresses evidence of the existence of other heirs with intent to defraud them, the fraud is extrinsic warranting the equity court in granting relief, but where the executor or heir acts in good faith the decree is final and conclusive and equity is without power to impose a trust."

The mere filing of the false claim in the Wenger estate was intrinsic fraud (*United States* v. *Throckmorton,* 98 U.S. 61 [25 L.Ed. 93]), but there was a wilful suppression of material evidence by the executor and trustee holding a confidential relationship as advisor to two heirs, and use of undue influence upon them not to protect their rights, which resulted to them in deprivation of assets of their father's estate, to which they were entitled. Under such circumstances, the acts

of Dr. Tobias constituted extrinsic fraud, and a trust was properly imposed in the present independent action (*Caldwell* v. *Taylor*, 218 Cal. 471 [23 P.2d 758, 88 A.L.R. 1194]) upon the estate of Dr. Tobias. (*Zaremba* v. *Woods, supra; Bankers Trust Co.* v. *Patton, supra; Purinton* v. *Dyson, supra.*)

██ Appellants contend that the complaint fails to state a cause of action against Sylvia Wenger individually. Ordinarily a personal judgment may not be entered against an individual representative, as such, of an estate of a deceased on a liability of the decedent. ██ The complaint, naming Sylvia Wenger individually and as administratrix, alleged her to be the duly and regularly appointed administratrix of the estate of Elliott B. Tobias, and prays for judgment against her in each capacity. A demurrer was filed by "the defendants" which contained the objection "That the said complaint and each count thereof, does not state facts sufficient to constitute a cause of action against either defendant." There is nothing in the record by way of citation or otherwise indicating that the demurrer "distinctly" specified (Code Civ. Proc., § 431) the particular ground now urged on appeal. It is shown that at a hearing on the demurrer in the municipal court the complaint was amended on its face at the request of plaintiffs, and the action, not being within the jurisdiction of that court, was transferred to the superior court. But, so far as the record on appeal shows, defendants failed to have the demurrer placed on the calendar for hearing in the superior court, and instead filed answers. This appears to be a waiver of the ground of demurrer, except insofar as jurisdiction is concerned. During the trial, on motion for a nonsuit, it was stated "that Sylvia Wenger in her individual capacity has had no dealings with the plaintiffs." This is the nearest approach to the point now urged on appeal.

██ The record discloses that the administratrix, as an heir of decedent Tobias, received individually a portion of his estate on partial distribution. The court found that the bank, cotrustee in the Wenger estate, was entitled to have returned to the trust estate, to be held and disbursed as part thereof, the amounts specified, with interest, and rendered judgment that the sums be paid from the estate of Tobias, and "that if the specific money above referred to or any part thereof cannot be recovered, that plaintiffs . . . for the benefit of said trust estate" recover from the defendant "individually and

as such administratrix'' the specified sums. The judgment is qualified; the personal judgment is limited and secondary to the judgment against Tobias' estate. Under the circumstances above narrated, if it should develop that, through the ratable distribution of assets in the Tobias estate, money belonging to the Wenger trust had been permitted to find its way to Sylvia Wenger individually, with her knowledge and in the face of a duty to retain it in the estate of Tobias at least until determination of its ownership, the beneficiaries should be permitted to follow the property and enforce the trust. (*Back* v. *Farnsworth*, 25 Cal.App.2d 212 [77 P.2d 295]; *Swanson* v. *Siem*, 124 Cal.App. 519 [12 P.2d 1053].)

Appellants contend the complaint shows on its face that the action is barred by the statute of limitations. The bar of the statute is pleaded in the answer of Sylvia Wenger as administratrix—wherein are cited Probate Code, section 714; Code of Civil Procedure, sections 338, subdivision 4, and 339, subdivision 1, and Civil Code, section 1607. In appellants' opening brief—the only one filed by them—no mention is made of Civil Code, section 1607. The statute of limitations is not raised by demurrer, but, as stated, by answer, and then only in that of Sylvia Wenger as administratrix of her brother's estate; not in the answer filed by her individually.

The claim filed in the estate of Tobias purports to be a claim for breach of contract or breach of trust; it is not specifically based upon fraud. In the complaint herein, the gist of the first cause of action appears in paragraph nine of the complaint as follows: ''Plaintiffs consented orally to said proposal [that of Tobias to file a creditor's claim against their father's estate in the amount suggested by him], but at the time of said consent plaintiffs, and each of them, were minors and were in a state of shock and indecision caused by the death of their father, the said Philip Wenger; that at said time, and for many years prior thereto, said Elliott B. Tobias was related to plaintiffs by marriage; that at the time of the said consent, a relationship of trust and confidence existed between said minors and Elliott B. Tobias, and relied upon his advice and suggestion in giving such consent'' and there was proof that Dr. Tobias prevented the children from presenting the true facts to the probate court in the Estate of Wenger. Presumably all of the facts that warranted the filing of the present complaint were not known at the time plaintiffs filed their claim against the Tobias

estate. The present action, though similar, is not based upon the identical facts as set forth in the claim. In *Olivera* v. *Grace, supra,* wherein the rights of an incompetent person are considered, the court said (pp. 575-576): "One who has been prevented by extrinsic factors from presenting his case to the court may bring an independent action in equity to secure relief from the judgment entered against him. (*Caldwell* v. *Taylor,* [218 Cal. 471 (23 P.2d 758, 88 A.L.R. 1194)]; *Purinton* v. *Dyson,* 8 Cal.2d 322 [65 P.2d 777, 113 A.L.R. 1230]; *Dunlap* v. *Steere,* 92 Cal. 344 [28 P. 563, 27 Am.St.Rep. 143, 16 L.R.A. 361.]) . . . In determining whether the complaint in the present proceeding states a cause of action, therefore, we may consider those cases in which equitable relief has been granted in favor of an incompetent defendant, whether the jurisdiction of equity was invoked by motion before a court of general jurisdiction or by an independent action in equity."

The complaint in the present action is silent relative to the date of the discovery of the fraud. It could have been attacked in that regard by special demurrer, but the defendants elected to raise any question of the statute of limitations by answer in a separate and distinct defense, which cast the proof of such special defense upon them. Incidentally, it should be mentioned that appellants direct their attack under the provisions of Code of Civil Procedure, section 338, subdivision 4, and section 339, subdivision 1, against Gladys Wenger Rosenbaum, and not against Leland Wenger. The record as a whole indicates that the fraud was not discovered until after the filing of the claim in the Tobias estate. The present complaint was filed within the same year. No further consideration need be given the statute of limitations as appellants in their brief have stated: "This suit is filed on the very last day permitted by the statute."

The judgment is affirmed.

Peters, P. J., and Wagler, J. pro tem., concurred.

A petition for a rehearing was denied November 16, 1942, and appellants' petition for a hearing by the Supreme Court was denied December 14, 1942.